UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARCIA L. GOETTELMAN,  Case No. 1:20-cv-202
    Plaintiff,  Litkovitz, M.J.

vs.

COMMISSIONER OF  **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Marcia L. Goettelman brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 23), the Commissioner's response in opposition (Doc. 30), and plaintiff's reply memorandum (Doc. 33).

**I. Procedural Background**

Plaintiff protectively filed her applications for DIB and SSI in October 2015, alleging disability since December 31, 2009[1], due to degenerative back disease (sciatica), inflammatory bowel disease, diverticulosis, hypertension, depression, anxiety, Guillain-Barré syndrome, and frequent muscle spasms. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Renita K. Bivins. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on September 6, 2018. On October 3, 2018, the ALJ issued a decision finding plaintiff has not been under a disabled since October 25, 2013. This decision

---

[1] Plaintiff amended her alleged onset date of disability to October 25, 2013 at the administrative hearing. (Tr. 87).

became the final decision of the Commissioner when the Appeals Council denied review on November 1, 2019. (Tr. 3-10).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 25, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease (DDD), spondylolisthesis, status post cervical discectomy and fusion, hip bursitis, inflammatory bowel disease, obesity, [and] affective disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. She is able to stand and/or walk for 6 hours per 8-hour day and sit for 6 hours per 8-hour day with normal breaks. She can occasionally climb ladders, ropes, or scaffolds and stoop. She can perform frequent handling. She is limited to simple, routine, and repetitive tasks with no production rate pace work (such as assembly line work) but instead could perform goal-oriented work (such as office cleaner). She is limited to an environment that requires only simple work-related decisions and no more than occasional changes in routine setting. She can have occasional interaction with the public, coworkers, and supervisors. Due to medical

conditions, symptoms, and pain the [plaintiff] would be off task 4% of the work period and absent one day every 45 days.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born on October 29, 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 25, 2013, through the date of this decision (20 CFR 404.1520(g) And 416.920g)).

(Tr. 24-37).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff alleges the ALJ erred by (1) impermissibly comparing minimal daily activities to typical work activities; (2) improperly relying on VE testimony; and (3) failing to properly evaluate the opinion of her treating physician, Dr. Nicole Boschuetz. (Doc. 23).[2] The Commissioner generally argues that the ALJ's decision is supported by substantial evidence. (Doc. 30). The Court addresses plaintiff's assignments of error in reverse order.

---

[2] The Court notes that Dr. Nicole Boschuetz's name is spelled differently in the medical record, the parties' filings, and the ALJ's decision—the medical record, including the doctor's medical source statement, is signed "Boschuetz" (Tr. 2308); however, the parties and the ALJ use "Boschnet" and "Boschnett." (*See* Tr. 34; Doc. 23 at PAGEID 9435; Doc. 30 at PAGEID 9462). For purposes of this Order, the Court will use the spelling as referenced in the medical record.

5

**1. The ALJ improperly weighed the medical opinion evidence (third assignment of error)**

In her third assignment of error, plaintiff alleges that the ALJ improperly gave little or no weight to the medical source statement completed by plaintiff's internal medicine treating physician, Dr. Boschuetz. (Doc. 23 at PAGEID 9435). Plaintiff specifically contends that the ALJ committed "material and reversible error" by failing to evaluate Dr. Boschuetz's opinion pursuant to 20 C.F.R. § 404.1527(c)(3). (*Id*.). In response, the Commissioner contends that substantial evidence supports the ALJ's determination that Dr. Boschuetz's medical opinion was only entitled to limited weight.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.[3] Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment

---

[3] 20 C.F.R. § 404.1527, which sets out the treating physician rule, has been amended for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. This amendment does not apply to plaintiff's claims, which she filed in October 2015. (*See* Tr. 21).

6

relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)).

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of h[er] case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled," and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

Dr. Boschuetz completed a "Degenerative Disc Disease: Cervical/Lumbar Spine, Arthritis Lower Extremity Medical Source Statement" on October 27, 2017. (Doc. 17-15 at Tr. 2302-08). She indicated that she had seen plaintiff "ongoing every 3 months." (Tr. 2302). Plaintiff's diagnoses were carpel tunnel and degenerative disc disease. (*Id*.). Dr. Boschuetz opined that plaintiff had chronic pain/paresthesia in the back, "bilateral hand daily," hips, and neck. (*Id*.). Dr. Boschuetz opined that plaintiff had the following signs, findings, and associated symptoms related to her impairments: tenderness, chronic fatigue, lack of coordination, reduced

7

grip strength, and she drops things. (*Id.*). Dr. Boschuetz opined that plaintiff had limitation of motion and severe headache pain associated with the impairment of the cervical spine (Tr. 2302-03); reduced range of motion described as "flexion fingertips just past knees" (Tr. 2303); reduced grip strength; and chronic joint pain and stiffness in the affected joints (Tr. 2304). Dr. Boschuetz opined plaintiff cannot walk a block at a reasonable pace on rough or uneven surfaces, carry out routine ambulatory activities including grocery and clothes shopping and banking, or climb several stairs at a reasonable pace with use of only a single handrail. (*Id.*). Dr. Boschuetz stated that plaintiff does not need an assistive device to ambulate. (*Id.*). Dr. Boschuetz also opined that depression and anxiety contribute to the severity of plaintiff's symptoms and functional limitations and affect her physical condition. (Tr. 2305).

Dr. Boschuetz assessed the following functional limitations: Plaintiff can walk zero blocks without rest or severe pain, sit 10 to 15 minutes at one time before she must get up, stand 5 minutes before she must change positions, and sit and stand/walk less than 2 hours total each in an 8-hour workday; she must be able to shift positions at will from sitting, standing or walking, and she must take frequent unscheduled breaks during a workday before returning to work; and she could rarely lift 10 pounds, and rarely twist, stoop, crouch/squat, or climb ladders or stairs. (Tr. 2305-07). Dr. Boschuetz opined that plaintiff was incapable of even "low stress" work due to "uncontrolled depression." (Tr. 2307). Dr. Boschuetz estimated the onset date of plaintiff's limitations as greater than one year. (Tr. 2308).[4]

---

[4] The ALJ interpreted Dr. Boschuetz's handwritten notation "> 1 year" as "7 years." (Tr. 34). This appears to be a mis-reading of Dr. Boschuetz's handwritten notation. (Tr. 2308). The record demonstrates that Dr. Boschuetz did not establish a patient/physician relationship with plaintiff until December 2016, less than one year prior to her opined limitations in the medical source statement. (*See* Doc. 17-31 at Tr. 5292-99; *see also* Tr. 358, citing Tr. 2308, where plaintiff contends, "[a] review of Dr. Boschuetz's opinion very clearly demonstrates that Dr. Boschuetz opines "the onset date of the foregoing limitations is approximately > 1 year.").

The ALJ gave "[l]imited weight" to the opinion of "Nicole Boschnett." (Tr. 34). The ALJ stated, "[i]t is unclear if Ms. Boschnett is a medical expert and her assessment appears generally inconsistent with the record, including the relatively normal examination findings, including those following claimant's surgery." (*Id*.). The ALJ cited a single treatment note from March 2018 in support of this finding. (*Id*.) (citing B50F [Doc. 17-52 at Tr. 9364]). The ALJ found "Ms. Boschnett's" listed diagnosis of carpel tunnel syndrome was inconsistent with the plaintiff's report in October 2017 that she did not have carpel tunnel syndrome and plaintiff's testimony at the hearing that her doctor found no carpel tunnel syndrome after an EMG. (*Id*.). The ALJ further found that "Ms. Boschnett's" opinion was inconsistent with plaintiff's activities of daily living (Tr. 34) and with an April 2017 mental status examination. (Tr. 35) (citing Tr. B32F/6 [Doc. 17-33 at Tr. 5804]).

In evaluating the ALJ's decision, the Court must first determine if the ALJ applied the proper standard for weighing Dr. Boschuetz's opinion. Plaintiff argues that the ALJ failed to acknowledge that Dr. Boschuetz was a medical doctor and therefore erred by failing to evaluate her opinion according to the treating physician rule. (Doc. 23 at PAGEID 9435). Plaintiff contends the Appeals Council should have considered information that was submitted after the ALJ's decision which plaintiff alleges "conclusively established" that Dr. Boschuetz was in fact a medical doctor, and the Appeals Council should have reversed the ALJ's decision based on this information. (*Id*.; *see also* Tr. 367-69).[5] The Commissioner argues that plaintiff is improperly relying on an exhibit that was not before the ALJ and "has not requested a remand pursuant to

---

[5] The evidence submitted to the Appeals Council consists of a Google search of "nicole boschuetz cincinnati" (Tr. 367) and two documents which purport to be confirmation of the medical licensure of Dr. Nicole Boschuetz (Tr. 368-69).

sentence six, which is the proper way to get additional evidence before the court, so [plaintiff's] argument should be considered waived." (Doc. 30 at PAGEID 9461) (citations omitted).

The Court cannot consider evidence presented for the first time to the Appeals Council in deciding whether to uphold or reverse the ALJ's decision under sentence four of 42 U.S.C. § 405(g). *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). Rather, when evidence is presented to the Appeals Council for the first time, the only issue to decide is whether in light of that evidence the matter should be remanded under sentence six of § 405(g) for further administrative proceedings. A remand under sentence six is warranted only if plaintiff shows "that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id*. (citing *Cotton*, 2 F.3d at 696).

Plaintiff, however, has not requested a sentence six remand or argued that one is warranted. Rather, plaintiff argues that Dr. Boschuetz's "medical credentials are conclusively established on this record" by the exhibits submitted to the Appeals Council. (Doc. 23 at PAGEID 9435-36). Plaintiff has failed to show that this evidence is new and that good cause exists for the failure to include this information in the prior ALJ proceeding. *See* 42 U.S.C. § 405(g), Sentence Six; *see also Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (citing 42 U.S.C. § 405(g), Sentence Six; *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). Therefore, there is no basis for ordering a remand under Sentence Six of 42 U.S.C. § 405(g).

In any event, the ALJ erred by failing to recognize that Dr. Boschuetz was a treating physician and to evaluate her opinion under the treating physician rule. The Commissioner does not dispute that Dr. Boschuetz is in fact a medical doctor. (*See* Doc. 30 at PAGEID 9460). The

record shows that plaintiff received primary care services from the University of Cincinnati Medical Center Hoxworth Clinic ("Hoxworth Clinic") during the relevant period of disability (*see generally* Doc. 17-30 at Tr. 5058-5238; Doc. 17-31 at Tr. 5239-5438), and that Dr. Boschuetz was one of plaintiff's primary care physicians at the Hoxworth Clinic. Plaintiff saw Dr. Boschuetz four times over a 12-month period for the purposes of treating plaintiff through the Hoxworth Clinic. (Doc. 17-31 at Tr. 5292-99, December 12, 2016; *Id*. at Tr. 5249-56, January 24, 2017; Doc. 17-30 at Tr. 5210-14, March 23, 2017; Doc. 17-31 at Tr. 5355-58, September 26, 2017).[6] The ALJ therefore erred in her finding that "[i]t is unclear if Ms. Boschnett is a medical expert[.]" (Tr. 34).

     Having established that Dr. Boschuetz is a medical doctor, the Court must determine whether the ALJ applied the proper standard for evaluating Dr. Boschuetz's opinion. The classification of a medical source is a question of law which the Court reviews de novo. *Blakley*, 581 F.3d at 407 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). Pursuant to 20 C.F.R. § 404.1527(a)(2), a physician qualifies as a "treating source" if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition(s)." *Id*. To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. *Id*. Whether the source of a medical opinion is a "treating source" requires a fact-specific inquiry. *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006). There is no set number of times a patient must be seen by a single physician or facility for that doctor or facility to be considered a "treating source." *Id*.;

---

[6] The Court notes Dr. Nicole Alysse Boschuetz also treated plaintiff under the name Dr. Nicole Alysse Levin. (*See* Tr. 5292-99, 5249, 5210).

11

*Kornecky v. Comm'r of Soc. Se*c., No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [the claimant] had the ongoing relationship with [the physician] at the time he rendered his opinion[.]").

The record demonstrates that plaintiff had an on-going treating relationship with Dr. Boschuetz because plaintiff was treated by Dr. Boschuetz four times over a 12-month period at the Hoxworth Clinic. *Cf. Kornecky*, 167 F. App'x at 506 ("a plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship") (citations omitted); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (physician examined the plaintiff on only one occasion, and the rationale of the treating physician doctrine therefore did not apply). Accordingly, Dr. Boschuetz was one of plaintiff's treating physicians, and the ALJ was therefore required to evaluate Dr. Boschuetz's opinion under the treating physician rule.

As a treating physician, Dr. Boschuetz's opinion "should have been given controlling weight absent justifiable reasons—made on the record—for discounting th[at] opinion[]." *Blakley*, 581 F.3d at 408 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4-5). The ALJ failed to examine whether Dr. Boschuetz's opinion was well-supported by her own medical examination findings or the findings of the other Hoxworth Clinic physicians contained in plaintiff's available medical chart. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Gayheart*, 710 F.3d at 376. Even if Dr. Boschuetz's opinion was not entitled to controlling weight, it was incumbent upon the ALJ to give deference to the opinion of the treating physician and weigh Dr. Boschuetz's opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. The ALJ's decision does not show that she considered the requisite regulatory factors in weighing Dr. Boschuetz's opinion. The ALJ did not consider the length of the treatment relationship and the frequency of examination, the nature and extent

of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581 F.3d at 408. Indeed, the ALJ failed to acknowledge that Dr. Boschuetz was even a physician, despite evidence in the record showing her treatment of plaintiff.

Though there are instances where such "procedural violation[s] may constitute harmless error, such as when 'a treating source's opinion is so patently deficient that the Commissioner could not possibility credit it' or where the Commissioner 'has met the goal of . . . the procedural safeguard of reasons[,]'" this is not one of them. *Fisk v. Astrue*, 253 F. App'x 580, 586 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 547). The Court is unable to engage in "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544, because it is not "sufficiently specific to make clear" to the Court that the ALJ considered Dr. Boschuetz's opinion in accordance with the applicable regulations. SSR 96-2p, 1996 WL 374188, at *5. The Court cannot say that the treating physician's opinion was "so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547.

Accordingly, this matter is reversed and remanded for a re-weighing of Dr. Boschuetz's opinion in accordance with the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.

**2. Whether the ALJ's Step Five finding was supported by substantial evidence (second assignment of error)**

As best the Court can discern, it appears that plaintiff's second assignment of error alleges the ALJ erred by not relying on the VE testimony at Step Five of the sequential evaluation process. (Doc. 23 at PAGEID 9433). Plaintiff alleges that at the second hearing, the VE withdrew her opinion that plaintiff was able to perform the jobs previously identified by the VE at the first hearing. (*Id.*).

13

At the first ALJ hearing in this case, and in response to a hypothetical question that included an individual with plaintiff's RFC, the VE identified three jobs the individual could perform: packager, garment sorter, and laundry folder. (Tr. 53, recapping VE's testimony at first hearing). At the second hearing, plaintiff's attorney asked the VE to assume that plaintiff was "moderately limited," which the attorney defined as demonstrating "noticeable difficulty in the workplace about 10% of the time," in her ability to perform certain work-related activities. (Tr. 54). Given this definition of "moderately limited," the VE testified that the jobs she previously identified would be eliminated. (Tr. 55-57).

Contrary to plaintiff's argument, the VE did not withdraw her previous opinion on plaintiff's ability to perform certain jobs given a hypothetical question based on plaintiff's RFC. Instead, using plaintiff's attorney's definition of "moderately limited," i.e., "noticeable difficulty 10% of the workday," the VE testified that the packager, garment sorter, and laundry folder jobs previously identified would be eliminated. However, plaintiff fails to cite to any evidence showing that plaintiff had "noticeable difficulty 10% of the workday" in certain work-related activities.

The ALJ adopted the limitations assessed by Dr. Voyten, the state agency psychologist who reviewed the record evidence. Dr. Voyten opined that plaintiff was moderately limited in her ability to perform certain job functions, such as carrying out detailed instructions, maintaining attention and concentration for extended periods, and completing a normal workday and workweek without interruption from psychologically based symptoms. (Tr. 168-169). Dr. Voyten stated that as a result of all her limitations, plaintiff was:

> limited to simple, routine, and repetitive tasks and she could not perform production rate pace work (such as assembly line work) but instead could perform goal-oriented work (such as office cleaner). She is also limited to an environment

14

>that requires only simple work related decisions and no more than occasional changes in a routine setting. Finally the claimant could occasionally interact.

(Tr. 170).

In determining plaintiff's RFC, the ALJ adopted the restrictions set forth by Dr. Voyten and found that plaintiff was "limited to simple, routine, and repetitive tasks with no production rate pace work (such as assembly line work) but instead could perform goal-oriented work (such as office cleaner). She is limited to an environment that requires only simple work-related decisions and no more than occasional changes in routine setting. She can have occasional interaction with the public, coworkers, and supervisors." (Tr. 27). The ALJ further found that plaintiff "would be off task 4% of the work period and absent one day every 45 days" as a result of the symptoms and pain from her medical conditions. (*Id.*).

Plaintiff has not alleged any error with the ALJ's RFC finding on plaintiff's mental functioning or alleged any error regarding the ALJ's weighing of Dr. Voyten's opinion. There is no indication that Dr. Voyten equated "moderate" limitations with the definition posed by plaintiff's counsel. Also, plaintiff has pointed to no medical evidence in the record showing that plaintiff would have "noticeable difficulty 10% of the workday." The ALJ is not required to rely on an unsupported hypothetical question and "is required to incorporate only those limitations accepted as credible. . . ." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). *See also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("When asked a hypothetical question encompassing the limitations that the ALJ found credible, the VE testified that jobs existed. The additional limitations offered by Carrelli's attorney—limitations that the ALJ found not credible—need not be considered."). The Court finds no error in this regard.

Similarly, the ALJ did not err by failing to adopt the VE's testimony that if plaintiff's bimanual dexterity was markedly limited (i.e., limited to only "occasional" as opposed to

"frequent") she would not be able to perform the previously identified jobs. (Tr. 63). Plaintiff has failed to allege any error with the ALJ's RFC finding in this regard. Nor has plaintiff cited to any evidence establishing that her bimanual dexterity was markedly limited on a sustained basis such that her ability to perform the jobs previously identified would be precluded. It appears that during a functional capacity evaluation in July 2015, plaintiff demonstrated "marked difficulty using the fingers." (Tr. 1576). While plaintiff demonstrated "difficulty" manipulating the pegs with her thumb during a September 2017 functional capacity evaluation, there is no further qualification concerning the amount of difficulty or its vocational implications. (Tr. 2311). In October 2017, Dr. Boschuetz opined that plaintiff had significant limitations with "reaching, handling or fingering," but she did not quantify any specific limitations with fine manipulation. (Tr. 2307). Given the lack of evidence that plaintiff was limited to only "occasional" fine manipulation, the ALJ did not err by failing to include such a limitation in the RFC or declining to rely on the VE testimony on such a limitation.

Plaintiff further contends the ALJ should have found her disabled because the vocational expert testified that there would be no jobs available for an individual who was unable to sit for an hour without changing positions and off task for two or three minutes. (Doc. 23 at PAGEID 9434). Because the ALJ did not find these two limitations were supported by the record, she did not include these limitations in her RFC finding. As a result, the ALJ's failure to rely on the VE's response to a hypothetical question that included these limitations was not in error. *See Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) ("While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of

16

determining disability if the question accurately portrays the claimant's individual physical and mental impairments.") (internal quotation marks and citation omitted).

Plaintiff's second assignment of error is overruled.

### 3. ALJ's assessment of plaintiff's activities of daily living (first assignment of error)

In her first assignment of error, plaintiff alleges that the ALJ erred by "impermissibly compar[ing] minimal daily functions to typical work activities." (Doc. 23 at PAGEID 9432). The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff's allegations were not entirely consistent with the medical evidence. (Doc. 30 at PAGEID 9467).

To the extent plaintiff alleges the ALJ erred in evaluating her subjective complaints of pain and limitations by misconstruing her daily activities, the Court need not reach this assignment of error. As stated above, the undersigned finds this matter must be remanded based on the ALJ's errors in weighing Dr. Boschuetz's opinion. The remand of this matter for a reweighing of the treating physician's opinion may impact the remainder of the sequential evaluation process, including the ALJ's assessment of plaintiff's subjective allegations of pain and limitations. In any event, even if this assignment of error has merit, the result would be the same, i.e., a remand for further proceedings and not outright reversal for benefits. *See Mays v. Comm'r of Soc. Sec.*, No. 1:14-cv-647, 2015 WL 4755203, at *13 (S.D. Ohio Aug. 11, 2015) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2015 WL 5162479 (S.D. Ohio Sept. 3, 2015) (Dlott, J.). In light of the order of remand, the Court declines to reach this assignment of error.

### III. This matter should be reversed and remanded for further proceedings

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not

17

been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to re-weigh Dr. Boschuetz's opinion in accordance with this decision; to reassess plaintiff's RFC, giving appropriate weight to the opinions of Dr. Boschuetz, including an explanation on the record for the weight afforded to her opinions; to reassess plaintiff's subjective allegations of pain and limitations; and for further medical and vocational evidence as warranted.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: 9/17/2021

Karen L. Litkovitz
Chief United States Magistrate Judge